<u>NOT RECOMMENDED FOR PUBLICATION</u>

No. 23-4019

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 2, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| PHILLIP R. DURACHINSKY, | ) THE NORTHERN DISTRICT OF |
| | ) OHIO |
| Defendant-Appellant. | ) |

O R D E R

Before: COLE, GRIFFIN, and NALBANDIAN, Circuit Judges.

Phillip R. Durachinsky, a federal pretrial detainee appearing through counsel, appeals interlocutory the district court's order finding him incompetent to stand trial and committing him to the custody of the Attorney General to determine whether he could be restored to competency, pursuant to 18 U.S.C. § 4241(d)(1). The parties have waived oral argument, and this panel unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a). For the reasons that follow, we affirm.

I.

In January 2017, Durachinsky was arrested pursuant to a criminal complaint after an investigation revealed that he had installed malware on multiple computers to illegally access the networks at Case Western Reserve University and other universities and institutions. After the district court granted the government several extensions of time to indict, Durachinsky was indicted in January 2018. He was ultimately charged in a 36-count second superseding indictment with accessing and damaging protected computers, accessing a government computer without

authorization, sexual exploitation of a child, wire fraud, aggravated identity theft, and illegal wiretapping for a period from 2003 through his arrest in January 2017.  The second superseding indictment alleged that Durachinsky installed malware on thousands of computers that allowed him to control the computer by accessing stored data, uploading files, taking and downloading screenshots, logging the user's keystrokes, and turning on the computer's camera and microphone to surreptitiously record images and audio.  Durachinsky used his access to the infected computers to collect and save victims' personal data and records and to obtain their usernames and passwords to third-party websites.

Durachinsky initially waived his right to a detention hearing.  In January 2021, he moved for release on bond, but a magistrate judge denied that motion after a detention hearing and ordered that he remain detained pending trial.

In May 2023, Durachinsky's court-appointed attorney moved for a competency hearing, pursuant to 18 U.S.C. § 4241(a).  In support of the motion, counsel submitted a report of a forensic psychological examination conducted by a psychologist retained by the defense.  The psychologist concluded that Durachinsky suffers from autism and an unspecified mood disorder, rendering him unable to assist properly in his defense.  The government then moved the district court to order that Durachinsky undergo a psychiatric or psychological examination at a suitable Bureau of Prisons (BOP) facility, pursuant to 18 U.S.C. §§ 4241(b) and 4247(b), and that the examiner prepare a report on Durachinsky's competency to stand trial in accordance with § 4247(c).  After a hearing, the court granted the government's motion and ordered that Durachinsky "be placed in a medical, or other appropriate facility, for a psychological and/or psychiatric evaluation pursuant to 18 U.S.C. § 4241[](b) to determine if [he] is competent to stand trial and to assist with his defense."

In September 2023, the BOP submitted its report, which also advised that Durachinsky suffers from autism and that this disorder would substantially impair his ability to assist in his defense.  The BOP recommended that Durachinsky be referred for formal competency restoration.

The district court held a competency hearing in November 2023, where it summarized the psychological reports and asked the parties for their positions.  The government stipulated to both

reports and asked the court to find Durachinsky "incompetent and order him to be restored." Defense counsel responded, "That's our position as well." But counsel informed the court that Durachinsky wished to speak on the record, explaining that "he disagrees with the assessment of the two doctors" and was concerned that he did not have "another attorney to advocate for him being competent." When given the opportunity to speak, Durachinsky expressed that he was not being adequately represented at the hearing, that he had "issues with the way the original assessment was done," and that he had not seen the BOP report. He stated that he believed that any perceived inability to assist in his defense was due to his attorney's ineffectiveness and not an indication of incompetency and that he wished to put counsel on the stand to make that showing. The court continued the hearing to give him an opportunity to review the BOP report.

At the continued hearing, the district court noted Durachinsky's request for new counsel or to proceed pro se. Durachinsky explained that counsel did not file certain motions that he believed should be filed, failed to challenge the detention order, and misled him about the reasons for the initial psychological testing. He also asserted that counsel might be operating under a "potential conflict of interest with an alleged victim." The court proceeded to first consider competency. Durachinsky disagreed with this approach, stating that he was "asking for counsel at this hearing" and that he did not believe his request for new counsel could be considered after the hearing because he was "still being denied counsel." After giving Durachinsky an opportunity to explain his disagreement with the psychological reports and his position that he should be given the opportunity to call witnesses and submit other evidence to challenge the recommendation of those reports, the court ruled that Durachinsky was not competent to assist counsel in his defense. The court indicated that it would address Durachinsky's request for new counsel or to proceed pro se after the competency issue was resolved.

On December 8, 2023, the court ordered, pursuant to 18 U.S.C. § 4241(d)(1), that Durachinsky be committed to the Attorney General's custody and placed in a suitable facility "for a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings in this matter to go forward" (the "§ 4241(d)(1) order"). The court further ordered

that Durachinsky be designated for a facility within six weeks of the date of the order and stated that, if the government failed to do so, it would consider a motion from Durachinsky on bond. Durachinsky filed this interlocutory appeal, challenging the § 4241(d)(1) order.

In the meantime, during the pendency of this appeal, the BOP completed its second evaluation of Durachinsky's competency and sent a report to the district court in June 2024. The examiner concluded that Durachinsky's autism diagnosis was "not currently rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings or to assist properly in his defense."

The district court held another competency hearing in September 2024. This time, the government took the position, based on the BOP's second evaluation, that Durachinsky was competent. And as before, Durachinsky insisted that he was competent, while defense counsel advocated against that position. After the hearing, the court found that Durachinsky had not been restored to competency but that an additional period of restoration involving therapy aimed at his autism had a substantial likelihood of restoring him to competency. In a November 12, 2024, order (the "§ 4241(d)(2) order"), the court ordered that, in accordance with § 4241(d)(2)(A), Durachinsky "be returned to the custody of the Attorney General for an additional period not to exceed four months to determine whether [he] is restored to competency." Durachinsky also appealed the § 4241(d)(2) order, and that appeal is pending in case number 24-4009. Neither party has moved to consolidate the two appeals.

In this appeal from the § 4241(d)(1) order, Durachinsky argues that he was denied his right to counsel at the competency hearing and that he should have been permitted to call witnesses and present evidence at the hearing. He asks us to vacate the § 4241(d)(1) order and remand the matter for a de novo competency hearing with new counsel. The government argues the appeal is moot because Durachinsky's four-month commitment under the § 4241(d)(1) order has ended. It alternatively argues that Durachinsky was not denied his right to counsel at the hearing and that the district court did not abuse its discretion by denying his request to present witnesses and evidence himself. In his reply brief, Durachinsky argues that the appeal is not moot and reiterates that he was denied counsel and should have been permitted to call witnesses and present evidence.

II.

Before considering mootness, we briefly address the statutory scheme that governs competency proceedings. Section 4241 sets forth the procedure for determining a criminal defendant's mental competency to stand trial. At any point after the commencement of a prosecution and before sentencing, either party may move for a hearing to determine the defendant's mental competency. 18 U.S.C. § 4241(a). If the district court has "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," it must order a hearing. *Id.* Here, that hearing was conducted on November 29, 2023, and continued on December 7, 2023. Before the hearing, "the court may order that a psychiatric or psychological examination of the defendant be conducted," *id.* § 4241(b), as occurred in this case.

If, after the hearing, the district court "finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent" to stand trial, it must "commit the defendant to the custody of the Attorney General" for placement in a suitable treatment facility "for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." *Id.* § 4241(d)(1). Here, the district court entered the § 4241(d)(1) order—the subject of this appeal—on December 8, 2023.

After the initial four-month period, if the district court still finds by a preponderance of the evidence that the defendant is incompetent, the defendant may be ordered to remain in a suitable treatment facility "for an additional reasonable period of time" until either "his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward," or "the pending charges against him are disposed of according to law." *Id.* § 4241(d)(2). Here, the district court found that an additional period of treatment had a substantial likelihood of restoring Durachinsky to competency and therefore ordered, pursuant to § 4241(d)(2), that

Durachinsky be committed to the Attorney General's custody for an additional four-month period. Durachinsky is appealing that order in case number 24-4009.

The government acknowledges that the district court's § 4241(d)(1) order committing Durachinsky to the Attorney General's custody to determine if he could be restored to competency is appealable. *See United States v. Davis*, 93 F.3d 1286, 1289 (6th Cir. 1996) (holding that a district court's order of commitment for psychiatric examination "falls within that narrow class of cases reviewable on interlocutory appeal under the collateral order doctrine"). However, it contends that, because that initial four-month period has ended and Durachinsky is no longer committed pursuant to the § 4241(d)(1) order, this appeal is moot.

"A case may become moot at any stage of litigation when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Fouts v. Warren City Council*, 97 F.4th 459, 464 (6th Cir. 2024) (citation omitted). "If adversity disappears or if a court may not grant 'any effectual relief,' the case becomes moot." *Jarrett v. United States*, 79 F.4th 675, 678 (6th Cir. 2023) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)). In assessing mootness, we consider whether granting the relief sought would "make a difference to the legal interests of the parties." *In re Kramer*, 71 F.4th 428, 438 (6th Cir. 2023) (citation omitted).

The government argues that, because Durachinsky is no longer "in custody because of the Section 4241(d) commitment order, this Court no longer has any means of granting him relief from the commitment order, making this appeal moot." Given the district court's § 4241(d)(2) order, we disagree.[1] The § 4241(d)(1) order was only one step in the process of determining Durachinsky's competency to stand trial—a process that remains ongoing. Indeed, Durachinsky remains in the custody of the Attorney General pursuant to the § 4241(d)(2) order, which, under the statute, is an extension of the period of commitment ordered in the § 4241(d)(1) order. *See* 18 U.S.C. § 4241(d)(2) (allowing commitment "for an *additional* reasonable period of time"

---

[1]To be fair, the government filed its appellate brief, in which it raised this mootness argument, before the district court entered the § 4241(d)(2) order.

(emphasis added)).  Given the statutory framework outlined above, an order vacating the § 4241(d)(1) order would affect Durachinsky's legal interests because it would necessarily invalidate the § 4241(d)(2) order.  In similar circumstances, when the defendant has remained detained pursuant to a subsequent incompetency determination under §§ 4241(d)(2) or 4246, courts have held that an appeal of a § 4241(d)(1) order is not moot.  *See United States v. Alhindi*, 97 F.4th 814, 821 (11th Cir. 2024) (per curiam), *cert. denied*, 2025 WL 76654 (U.S. Jan. 13, 2025) (mem.); *United States v. Berry*, No. 23-30036, 2023 WL 2912484, at *3 (5th Cir. Apr. 12, 2023) (per curiam); *United States v. Mahoney*, 717 F.3d 257, 264 (1st Cir. 2013); *United States v. Evans*, 690 F.3d 940, 943 (8th Cir. 2012).  We agree with our well-reasoned sister circuits.

The cases cited by the government in support of mootness are distinguishable.  In *United States v. Rayyan*, 668 F. App'x 646 (6th Cir. 2016), the defendant challenged the "loss of liberty" he suffered when he was committed for a psychiatric evaluation, presumably pursuant to § 4241(b).  While the appeal was pending, the evaluation and the associated involuntary commitment was completed, so we dismissed the appeal as moot.  *Id.* at 646.  But unlike here, Rayyan was challenging only a commitment for an initial psychiatric examination, not a commitment for restoration of competency.  And Rayyan's period of commitment had ended.  In *United States v. Sanders*, 276 F. App'x 532, 533 (8th Cir. 2008) (per curiam), the court held that the defendant's appeal from an order that he undergo a psychological evaluation to determine whether he was competent to assist in his defense was moot where, during the appeal, he was found to be competent.  Similarly, in *United States v. Campos*, 23-10508, 2024 WL 33914, at *2 (11th Cir. Jan. 3, 2024) (per curiam), while the defendant's appeal from an order of extended commitment for restoration of competency under § 4241(d)(2) was pending, the defendant was deemed competent to stand trial and released from the Attorney General's custody.  Here, Durachinsky remains in the custody of the Attorney General after the district court declined to deem him incompetent.  His appeal from the initial competency determination and commitment under § 4241(d)(1) is therefore not moot, and we now turn to the merits.

III.

Durachinsky contends that he was denied his Sixth Amendment right to counsel at the competency hearing. He asserts that he "suffered from a constructive denial of counsel" because his attorney "took a position directly contrary to [his] wishes," thereby "abandon[ing] [his] role as advocate."

A complete absence of counsel at a critical stage of the proceedings is a per se violation of the Sixth Amendment that requires no showing of prejudice or error. *Van v. Jones*, 475 F.3d 292, 311–12 (6th Cir. 2007). "[A] competency hearing is a critical stage" of a criminal proceeding. *United States v. Ross*, 703 F.3d 856, 874 (6th Cir. 2012). Thus, the Sixth Amendment guarantees a defendant counsel at these hearings. In addition, the relevant statute requires that a defendant be represented by counsel at a competency hearing. *See* 18 U.S.C. § 4247(d) ("At a hearing ordered pursuant to this chapter the person whose mental condition is the subject of the hearing shall be represented by counsel.").

A constructive denial of the Sixth Amendment right to counsel occurs "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *See United States v. Cronic*, 466 U.S. 648, 659 (1984). In the context of a competency hearing, counsel satisfies the "meaningful adversarial testing" standard by, at a minimum, "adequately investigating, undertaking appropriate preparation for the hearing and then making an independent, strategic decision [whether or] not to contest competency." *Ross*, 703 F.3d at 873.

Counsel satisfied this standard at the initial competency hearing. As explained above, it was counsel who initiated the competency proceedings when he moved for a hearing after a forensic psychologist retained for mitigation purposes alerted him that Durachinsky might not be competent to stand trial and a second retained psychologist opined as much. It is clear that counsel analyzed the opinions of the defense-retained experts and the BOP's forensic psychologist, who agreed that Durachinsky was not competent to assist in his defense, and made an independent, strategic decision based on the evidence to recommend that Durachinsky be found incompetent. At the hearing, counsel acknowledged that the case presented an unusual set of circumstances where both the government and defense counsel agreed that Durachinsky was not competent, even

as Durachinsky insisted on his competence.  And counsel stated, "I don't make motions to have someone found not competent to assist me lightly."  That counsel's recommendation went against Durachinsky's position does not mean that Durachinsky was constructively denied counsel.  As stated above, at a competency hearing, the *Cronic* standard is satisfied if counsel adequately investigates the defendant's competency and makes an independent, strategic decision whether to contest competency, as counsel did here.  *See id.* at 873–74.  Durachinsky has not demonstrated that he was constructively denied counsel at the November 29, 2023, and December 7, 2023, competency hearing.

Durachinsky also argues that the district court should have appointed substitute counsel when he raised his disagreement with counsel's position on competency and counsel's potential conflict of interest with an alleged victim.  He contends that "[d]efense counsel taking a position contrary to his client's position is 'good cause' warranting substitution of counsel."  As discussed, counsel made an independent, strategic decision to stipulate to the experts' reports and recommended that Durachinsky be found incompetent to stand trial.  Durachinsky's disagreement with this strategy did not constitute good cause for substitution of counsel. *Cf. United States v. Johnson*, 612 F. App'x 345, 352 (6th Cir. 2015).  And to the extent that Durachinsky's request was based on other grounds, such as the alleged conflict of interest, the district court did not err by declining to consider his request before addressing the competency issue.  Similarly, to the extent that Durachinsky wished to proceed pro se, when a defendant's competency is in doubt, a court must make a competency determination before it can consider whether the defendant can validly waive his right to counsel.  *See Ross*, 703 F.3d at 867.  And upon finding that Durachinsky was not competent to proceed, there was no need for the district court to consider the request for new counsel at that point.

Finally, Durachinsky argues that he was denied the right to call witnesses and present evidence at the competency hearing, in violation of 18 U.S.C. § 4247(d) and his right to due process.  Section 4247(d) affords a defendant "an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at [a competency] hearing."  As discussed, Durachinsky was represented by counsel at the competency

hearing, who elected not to call witnesses or present evidence beyond the expert report. There is no indication that counsel was prevented from submitting additional evidence or calling witnesses. And because Durachinsky was represented by counsel, the district court did not err in denying his pro se request to call witnesses. *See United States v. Golson*, 95 F.4th 456, 460 (6th Cir. 2024) ("Because Golson was represented by counsel before the district court, his legal arguments were required to be presented by his counsel. Allowing Golson to represent himself would have amounted to 'hybrid representation,' which is not permitted without leave of the court.").

IV.

For these reasons, we **AFFIRM** the district court's 18 U.S.C. § 4241(d)(1) order. We express no opinion on the merits of Durachinsky's pending appeal of the district court's § 4241(d)(2) order in case number 24-4009.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk